UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MADISON CAVANAUGH, | : | CIVIL ACTION NO. 3:22-cv-1908 |
| Plaintiff, | : | (JUDGE MANNION) |
| v. | : | |
| WAL-MART STORES EAST, LP., | : | |
| Defendant. | : | |

## MEMORANDUM

Presently before the court is Defendant's motion for summary judgment. (Doc. 24.) Plaintiff initially sued Defendant, her former employer of two months, alleging discrimination and retaliation related to her pregnancy. However, the record presented to the court indicates no evidence of discrimination or retaliation. Instead, the record indicates that Plaintiff received accommodations related to her pregnancy and then voluntarily ended her employment with Defendant. Accordingly, Defendant's motion will be **GRANTED**.

I.    **Background**

On January 31, 2022, Defendant hired Plaintiff as an Orderfiller-Breakpack at its Distribution Center in Tobyhanna, Pennsylvania, where she reported to Area Managers Richard Facyson, Jr., and Joseph Kochmer.

Plaintiff's duties included order filling, carrying goods, scanning and checking labels for quality control, and sweeping. As per her job description she was required to move, lift, carry, and place merchandise and supplies weighing up to 40 pounds without assistance.

On February 19, 2022, two weeks after her hire, Plaintiff told Facyson she was pregnant and asked for accommodation. He referred her to Defendant's Accommodation Service Center ("ACS") and third-party claims administrator, Sedgwick, for further direction. On February 20, 2022, Plaintiff submitted a request for an intermittent leave of absence beginning February 21, 2022, and ending March 23, 2022. Sedgwick denied Plaintiff's request because she was not eligible for leave under the Family and Medical Leave Act ("FMLA"), which requires 1,250 hours of work within the preceding 12 months, but advised Plaintiff that she could request intermittent leave through the ACS.

On February 21, 2022, Plaintiff contacted the ASC by phone and requested an accommodation for breaks, snacks, and drinks while working, as well as the ability to sit down as needed. The ASC asked Plaintiff to provide medical certification from her physician. During this time Facyson and Kochmer provided Plaintiff with informal accommodations, including bathroom breaks when needed, pregnancy-related absences, and

assignments that did not require significant lifting, such as sweeping and folding t-shirts.

On March 11, 2022, Plaintiff's physician sent Sedgwick a copy of recommended restrictions, including: (1) a work schedule of no more than 8 hours a day, 40 hours a week; (2) no period greater than two hours of sitting or standing without a break; (3) hourly restroom breaks as necessary; (4) potentially limited stooping and bending after 20 weeks of gestation; (5) infrequent lifting, pulling, and pushing; and (6) limited repetitive lifting, pulling, and pushing. On March 14, 2022, Sedgwick notified Facyson that it initially approved Plaintiff for Temporary Alternative Duty ("TAD") related to her pregnancy restrictions, as well as extra breaks, through October 22, 2022, her expected due date. Facyson subsequently provided an additional 10-minute break per six-hour shift or a 15-minute break per shift lasting more than six hours. Facyson did not address Plaintiff's chair request because a chair could not be placed in the location Plaintiff worked (the warehouse floor) without causing a safety hazard. Still Defendant gave Plaintiff extra breaks in lieu of a chair and offered stationary tasks where she could sit.

Plaintiff did not appeal Sedgwick's decision and did not have conversations about the decision with anyone at Defendant, other than Facyson and her child's father (who also worked at Defendant). Plaintiff did

- 3 -

complain on one occasion to Facyson that he was not doing more to help her and on March 21, 2022, asked Facyson if she could work as an unloader in a different department, where she had seen other Breakpack associates do so. Facyson denied Plaintiff's request because the unloader position, which required heavier lifting than her Orderfiller position, would violate her pregnancy restrictions.

On or around April 15, 2022, Plaintiff told Human Resources Training Manager Jennifer Letcher she was not being provided her accommodations. However, Kochmer confirmed to Letcher via email that Plaintiff received accommodations as soon as she announced her pregnancy. Plaintiff also did not make any formal complaints via Sedgwick or Defendant's Ethics Helpline. On April 16, 2022, Plaintiff left her shift early and did not return. She subsequently informed Facyson and Kochmer she was resigning. Her resignation become effective May 1, 2022. Prior to her resignation no one at Defendant told her she was terminated.

Plaintiff initiated this action on December 1, 2022, alleging disability, pregnancy, and gender-based discrimination and retaliation under federal and state law. Discovery closed on January 31, 2024. Defendant now seeks summary judgment on all counts.

## II.    Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the nonmoving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *See also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (A court may not weigh the evidence or make credibility determinations.) The court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). Where the nonmoving party's evidence contradicts the

movant's, then the non-movant's must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citing *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991). But a non-movant "may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." *Anderson,* 477 U.S. at 256–57.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323–24. The moving party can discharge this burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *See also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The nonmoving party must direct the court's attention to specific, triable facts by "citing particular parts of materials in the record." Fed. R. Civ.

P. 56(c)(1)(A); *See United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (Quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *See also DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for [a plaintiff's] claim exist[s] in the record, it [i]s incumbent upon her to direct the District Court's attention to those facts.")

If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.   Discussion

Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of disability, pregnancy, or gender-based discrimination or retaliation. Plaintiff withdraws her disability-based discrimination and retaliation claims. However, she argues that summary judgment should be denied as to her remaining claims because there are genuine disputes of material fact regarding those claims.

## A. Plaintiff's Disability Based Claims

Plaintiff withdraws her disability-based discrimination and retaliation claims (Counts I, II, and VII of her complaint.) Accordingly, Defendant's motion for summary judgment will be granted with respect to those claims.

## B. Plaintiff's Pregnancy Discrimination Claims

The court uses the familiar *McDonnell Douglas* burden-shifting framework to analyze Plaintiff's Title VII pregnancy discrimination claims.[1] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this analysis, the employee must first establish a *prima facie* case. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008). If the employee is able to present such a case, then the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision. *Id.* If the employer is able to do so, the burden shifts back to the employee, who, to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination. *Id.*

---

[1] The Third Circuit construes Title VII and the PHRA consistently with each other. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F. 3d 535, 539 n.5 (3d Cir. 2006.) Accordingly, the court's analysis of Plaintiff's Title VII claims also applies to Plaintiff's PHRA claim.

To establish a *prima facie* case of pregnancy discrimination a plaintiff must show: (1) she was pregnant, and the employer knew of the pregnancy; (2) she was qualified for her position; (3) she suffered an adverse employment decision; and (4) the nexus between the plaintiff's pregnancy and an adverse employment action raises an inference of discrimination. *Id.* Here Defendant argues that Plaintiff has not identified evidence of an adverse employment action or that would support an inference of discrimination.

Under Title VII, an adverse employment action for purposes of a discrimination claim is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Betts v. Summit Oaks Hosp.*, 687 Fed. Appx. 206, 207 (3d Cir. 2017) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

The only adverse employment action Plaintiff claims was the denial of her physician's recommendation she be provided with a chair and her verbal request to transfer to another position. Regarding Plaintiff's request for a chair, she does not dispute that Defendant could not provide her with a chair on the warehouse floor without creating a safety hazard nor does she point to evidence that Defendant offered a chair on the warehouse floor to any

employee, pregnant or not. Still Defendant offered Plaintiff additional breaks and stationary tasks where she could sit in lieu of a chair. Given this context the denial of Plaintiff's chair request cannot be consider a significant change in employment status nor does it raise an inference of discrimination.

Regarding Plaintiff's request for a job transfer she cites *Hanafy v. Hill Int's, Inc.*, 669 F. Supp. 3d 419 (E.D. Pa. 2023), for the proposition that the denial of an informally requested accommodation constitutes an adverse employment action. However, Defendant points out that this case addressed a failure to accommodate in violation of the ADA, which Plaintiff has now withdrawn all her claims under.

Moreover, Defendant cites persuasive authority that courts should not consider lateral transfers adverse employment actions. *See e.g., Good v. Fed. Reserve Bank of Cleveland*, No. 05-383, 2007 WL 2955615, at *8 (W.D. Pa. Oct. 9, 2007) (citing *Fallon v. Meissner*, 66 Fed. Appx. 348, 352 (3d Cir. 2003)) ("It is well settled that a lateral transfer, or failure to be given the same, is not a materially adverse employment action sufficient to establish a *prima facie* case of employment discrimination.") Since the present motion was briefed, the Supreme Court found that employees need not show significant, serious, substantial or any similar harm to successfully challenge a job transfer under Title VII. *See Muldrow v. City of St. Louis, Missouri*, 601 U.S.

—, 144 S. Ct. 967, 972 (2024). Nonetheless, *Muldrow* involved an employee's involuntary job transfer, while the present case involves an employee's request for a voluntary job transfer. As such this new authority is not applicable to the present case and does not make the denial of Plaintiff's request an adverse employment action.

The Third Circuit has held that whereas here the record does not support "the existence of an adverse employment action, it was not necessary for the District Court to reach the other requirements for a *prima facie* case, including the requirement that the adverse employment action occur under circumstances that give rise to an inference of unlawful discrimination." *Betts v. Summit Oaks Hosp.*, 687 F. App'x 206, 208 (3d Cir. 2017). Still for the sake of good order the court will address Plaintiff's additional argument that Facyson's lack of authority to deny her request raises a genuine dispute of material fact.

Besides the fact that Plaintiff cites no authority indicating the court can infer a discriminatory nexus from Facyson's allegedly unauthorized denial, it is undisputed that Plaintiff did not request the denied accommodation through the channels she had already requested and been granted other accommodations. Plaintiff claims it was because she was new to the job and did not know Facyson lacked the authority to grant her request. But again,

Plaintiff had already been directed by Facyson to request accommodations through Sedgwick and the ACS, which it is undisputed she did not do for this particular request.  Additionally, Plaintiff does not identify any evidence that Facyson actually did lack the authority to deny her request, nor does she dispute that granting her request would violate her pregnancy restrictions. Absent such evidence there is no genuine dispute of material fact regarding the existence of a discriminatory nexus between Plaintiff's pregnancy and the denial of her job transfer request even if that denial was considered an adverse employment action.

Accordingly, a reasonable jury could not find that Plaintiff has established a *prima facie* case of pregnancy discrimination and Defendant's motion for summary judgment will be granted with respect to her pregnancy discrimination claims.

### C. Plaintiff's Gender Discrimination Claims

Title VII gender discrimination claims are also analyzed under the *McDonnell Douglas* burden-shifting framework. Like pregnancy discrimination claims to establish a *prima facie* case of gender discrimination a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action, and (4) the action occurred under circumstances giving

rise to an inference of discrimination. *Mandel v. M&Q Packaging Corp.*, 706 F. 3d 157, 169 (3d Cir. 2013). Again, Defendant argues that Plaintiff has failed to identify evidence of an adverse employment action and again the court agrees that the denial of Plaintiff's request for a chair and lateral job transfer does not constitute an adverse employment action. Likewise, Facyson's allegedly unauthorized denial of Plaintiff's request does not give rise to an inference of discrimination, even if the denial was considered an adverse employment action.

Accordingly, a reasonable jury could not find that Plaintiff has established a *prima facie* case of gender discrimination and Defendant's motion for summary judgment will be granted with respect to her gender discrimination claims.

### D. Plaintiff's Retaliation Claims

Like discrimination claims retaliation claims under Title VII, regardless of whether they are based on pregnancy or gender, are analyzed under the *McDonnell Douglas* framework. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that she engaged in protected conduct; (2) that she was subject to an adverse employment action subsequent to such activity; and (3) that a causal link exists between the protected activity and the adverse action. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d

Cir. 2015). Once again Defendant argues that Plaintiff was not subject to any adverse employment action and even if she was there is no causal link between her protected activity and Defendant's employment decisions.

As discussed above Facyson's denial of Plaintiff's request for a chair and lateral job transfer cannot be considered an adverse employment action. *See Betts*, 687 Fed. Appx. 207 (3d Cir. 2017). But even if it was, Defendant argues that it occurred too long after Plaintiff's protected activity to establish a causal connection. Specifically, Defendant asserts that at the time of the alleged retaliation nearly two months had lapsed since Plaintiff announced she was pregnant and requested accommodations. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (holding two-month lapse between protected activity and alleged retaliation does not create inference of retaliatory intent). Conversely, Plaintiff argues that her protected activities include not only requesting accommodations for her pregnancy but also complaining to Letcher that she was not receiving adequate accommodations. She asserts that a dispute of material fact remains as to whether Letcher took any sufficient action to investigate her complaint.

Plaintiff allegedly complained to Letcher on or around April 15, 2022, which was only 15 days before the official end of her employment with

- 14 -

Defendant. However, it undisputed that Plaintiff was not terminated. As previously stated, the only adverse employment action alleged was Facyson's denial of Plaintiff's request for the additional accommodation of a chair and lateral job transfer, which are respectively supposed to have happened on March 11 and March 21, 2022. Thus, the court cannot infer a causal link between Plaintiff's complaint to Letcher and denial of her requests which did not occur subsequent to her complaint but approximately a month before. Furthermore, Letcher did investigate Plaintiff's complaint by emailing with Kochmer and Plaintiff cites no authority indicating such an investigation is inadequate or that such inadequacy would otherwise support a retaliation claim.

Still Facyson's denial of Plaintiff's requests on March 11 and March 21, 2022, were less than two months after Plaintiff's initial announcement of her pregnancy and request for accommodations, on February 19, 2022. Under other circumstances such temporal proximity could suggest a retaliatory motive. But here Facyson denied Plaintiff's request because granting it would have led her to perform heavier lifting in violation of her pregnancy restrictions. As such the court could not infer a casual connection even if Facyson's denial was considered an adverse employment action..

Accordingly, a reasonable jury could not find that Plaintiff has established a *prima facie* case of retaliation based on pregnancy or gender and Defendant's motion for summary judgment will be granted with respect to her retaliation claims.

## IV.   Conclusion

Based on the aforesaid Defendant's motion for summary judgment will be **GRANTED** and this case closed. An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE: May 9, 2024**
22-1908-01